# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| Brandi Yeager, | )<br>) |
|     Plaintiff, | )   3:14-cv-00023 JWS |
| vs. | )   **ORDER AND OPINION** |
| Philadelphia Indemnity Insurance Company, | )   **[Re: Motion at Docket 24]**<br>)<br>) |
|     Defendant. | ) |

## I. MOTION PRESENTED

At docket 24 defendant Philadelphia Indemnity Insurance Company ("PIIC") moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Brandi Yeager ("Yeager") responds at docket 30. PIIC replies at docket 38. Oral argument was not requested and would not assist the court.

## II. BACKGROUND

This case presents claims arising from a 2012 automobile collision between Yeager and Hope Jackson ("Jackson"). At the time of the collision Yeager was employed by Safe and Fear-Free Environment, Inc. ("SAFE"), an organization that assists victims of domestic violence and sexual assault in the Bristol Bay area. Yeager was on "back-up duty" that night, meaning that she was required to be available to

respond to calls from individuals in crisis if SAFE's on-duty employee needed assistance.[1] According to SAFE, while Yeager was performing this duty "she had access to the SAFE vehicle and permission to use it for her back-up duties."[2] The exact scope of this permission is in dispute. SAFE's "Director Services Coordinator," Karen Carpenter ("Carpenter"), stated that SAFE allows its employees performing "back-up" or "on-call" duty to use the SAFE vehicle if they "don't happen to have a personal vehicle" or if they need to transport clients.[3] For example, Carpenter stated that Yeager could have used the vehicle if she "had to go out on call," if she had to come into work, or if she had to go to court on the weekend.[4]

On the night of the collision Yeager drove the SAFE vehicle to a bar where she consumed alcohol. After leaving the bar Yeager's blood alcohol content ("BAC") was above the legal limit.[5] Her vehicle collided with Jackson's, injuring herself, her passenger Wassily Kyakwok ("Kyakwok"), Jackson, and Jackson's passenger. SAFE terminated Yeager's employment the next day stating that Yeager had used SAFE's

---

[1] Doc. 24-2 at 2-3.

[2] Doc. 24-2 at 3.

[3] Doc. 30-1 at 3.

[4] *Id*.

[5] Doc. 24-7 at 1; Doc. 24-8; and Doc. 24-9. Yeager objects to this evidence (and a variety of other evidence) on the grounds that PIIC has not authenticated it or laid a sufficient foundation for its admissibility. *See* Doc. 30 at 3-4, 17. Yeager does not dispute the accuracy of the evidence's content or that PIIC could present that content in an admissible form at trial. Yeager's objections are overruled. Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact *cannot* be presented in a form that would be admissible in evidence.") (emphasis added); Fed. R. Civ. P. 1 (The court should construe the Civil Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding."). *See also Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) ("At the summary judgment stage, we do not focus on the admissibility of the evidence's form. We instead focus on the admissibility of its contents."); *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001).

vehicle "for personal use without authorization" and drove it while intoxicated "in violation of state law and SAFE's policies."[6]

Kyakwok brought a negligence action against Yeager in state court.[7] Yeager's responsive pleading includes a "counterclaim"[8] against PIIC in which she alleges that she is entitled to a declaration that she is owed benefits pursuant to the uninsured motorist ("UIM") and medical payments coverage found in SAFE's automobile insurance policy with PIIC ("the Policy").[9] PIIC removed the case to this court pursuant to 28 U.S.C. § 1332.[10] The case was then severed—Kyakwok's negligence claim against Yeager was remanded to state court, and this court retained jurisdiction over Yeager's declaratory judgment claim against PIIC.[11] PIIC now moves for summary judgment.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[12] The materiality requirement ensures that "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[13] Ultimately, "summary judgment will not lie if the . . . evidence is such that

---

[6]Doc. 24-10 at 1.

[7]Doc. 1-2 at 2-4.

[8]What Yeager styled as a "counterclaim" is actually an affirmative claim against a third-party defendant. *See* Fed. R. Civ. P. 14; Arthur R. Miller & Mary Kay Kane, 6 Fed. Prac. & Proc. Civ. § 1449 (3d ed.).

[9]Doc. 1-2 at 9 ¶¶ 20-21.

[10]Doc. 1 at 1.

[11]Doc. 13.

[12]Fed. R. Civ. P. 56(a).

[13]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

a reasonable jury could return a verdict for the nonmoving party."[14] However, summary judgment is mandated under Rule 56(c) "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[15]

The moving party has the burden of showing that there is no genuine dispute as to any material fact.[16] Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, the moving party need not present evidence to show that summary judgment is warranted; it need only point out the lack of any genuine dispute as to material fact.[17] Once the moving party has met this burden, the nonmoving party must set forth evidence of specific facts showing the existence of a genuine issue for trial.[18] All evidence presented by the non-movant must be believed for purposes of summary judgment, and all justifiable inferences must be drawn in favor of the non-movant.[19] However, the non-moving party may not rest upon mere allegations or denials, but must show that there is sufficient evidence supporting the claimed factual dispute to require a fact-finder to resolve the parties' differing versions of the truth at trial.[20]

## IV. DISCUSSION

The parties agree that Yeager is an "insured" under the Policy's UIM endorsement because she was occupying a covered automobile at the time of the

---

[14] *Id.*

[15] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[16] *Id.* at 323.

[17] *Id.* at 323-25.

[18] *Anderson,* 477 U.S. at 248-49.

[19] *Id.* at 255.

[20] *Id.* at 248-49.

-4-

crash.[21] PIIC argues that Yeager's claim is nevertheless precluded by the UIM endorsement's Exclusion C.7 ("the exclusion clause"), which states that UIM coverage "does not apply to . . . [a]nyone using a vehicle without a reasonable belief that the person is entitled to do so."[22]  Yeager disagrees, arguing that the exclusion clause is void because it violates Alaska statutory law and, alternatively, the clause does not apply under the facts of this case.

**A.      Yeager's Statutory Arguments**

Yeager argues that the exclusion clause is void because it violates AS 28.20.440(b) and AS 21.96.020(c).  The first statute is part of the Motor Vehicle Safety Responsibility Act ("MVSRA"), codified as Title 28, chapter 20, of the Alaska Statutes.[23]  All automobile policies issued in Alaska must meet the content requirements imposed by the MVSRA.[24]  Among other things, the requirements found at AS 28.20.440(b) provide that every liability policy must (1) insure the named insured, "and every other person using the vehicle with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the . . . use of the vehicle.;"[25] and (2) contain uninsured motorist coverage for the protection of persons insured under the policy who are legally entitled to recover damages from uninsured motorists for damages arising out of the use of the uninsured motor vehicle.[26]

---

[21]Doc. 24-13 at 3-4 ("If the Named Insured is designated in the Declaration as . . . [any] form of organization, then the following are 'insureds': . . . Anyone 'occupying' a covered 'auto.'").

[22]*Id*. at 4.  This is a standard clause found in uninsured motorist policies.  *See* 2 William J. Schermer & Irvin E. Schermer, Automobile Liability Insurance § 25:13 (4th ed.).

[23]*Progressive Ins. Co. v. Simmons*, 953 P.2d 510, 520 (Alaska 1998).

[24]*Id*.

[25]AS 28.20.440(b)(2).

[26]AS 28.20.440(b)(3).

The second statute, AS 21.96.020(c), is part of the Alaska Insurance Act, which also "sets out 'required motor vehicle coverage' in Alaska."[27] The statute "prescribes requirements partly by referring to provisions of two other statutes, the [MVSRA] and the Alaska Mandatory Automobile Insurance Act."[28] Relevant to this case, AS 21.96.020(c) requires automobile liability insurers to offer UIM coverage "prescribed in AS 28.20.440 and AS 28.20.445 or AS 28.22."[29]

Yeager's first statutory argument relies on both AS 21.96.020 and AS 28.20.440. She argues that AS 21.96.020(c) requires PIIC to offer UIM coverage to every person using a covered vehicle with permission of the named insured, and AS 28.20.440(b)(2) provides that such coverage must exist for damages arising out of any "use" of the vehicle.[30] She concludes that the exclusion clause violates these two statutes because it "purports to limit what uses are covered."[31] Yeager's argument relies on *Kalenka v. Invinity Insurance Companies*.[32] There, the insurer's policy limited the covered uses to those that are "the main cause of a bodily injury or property damage."[33] The Alaska Supreme Court held that this limitation is void because it reduces the scope of coverage below the statutory minimum, which does not limit the scope of coverage depending on the type of "use" that caused the damages.[34]

---

[27]*Ayres v. United Servs. Auto. Ass'n*, 160 P.3d 128, 129 (Alaska 2007) (citing AS 21.89.020, the former version of AS 21.96.020). *See McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 730 n.82 (Alaska 2013) ("Alaska Statute 21.89.020(c)(1) was renumbered as AS 21.96.020(c)(1).").

[28]*Ayres*, 160 P.3d at 129 n.7.

[29]AS 21.96.020(c).

[30]Doc. 30 at 10.

[31]*Id*. at 11.

[32]262 P.3d 602 (Alaska 2011).

[33]*Id*. at 610.

[34]*Id*. (citing AS 28.22.101(a)).

*Kalenka* does not control here.  There, the court held that the only causes of damages that insurers may exclude from liability coverage are those which do not arise from the "ownership, maintenance, or use" of a vehicle.[35]  The exclusion clause here does not purport to limit coverage based on the "use" that caused damages.  Instead, it purports to limit coverage based on the user.  Alaska law permits insurers to provide UIM coverage only to the named insured and permissive users.[36]  The real question presented here is whether the exclusion clause limits the covered users below what is required by Alaska law.

Yeager's next argument focuses on that very question.  Yeager argues that the exclusion clause is void because it focuses on the user's "reasonable belief" and not his or her actual permission, as is required under AS 28.20.440(b).  Courts considering similar arguments have reached divergent conclusions; at least one court ruled that the clause impermissibly limits the scope of coverage,[37] and at least one other upheld the clause because it expands the required coverage.[38]  The Alaska Supreme Court has yet to weigh in.

In order to determine whether the exclusion clause either restricts or expands upon the minimum coverage required by Alaska law, the court must first determine the

---

[35]*Id*.

[36]AS 28.20.440(b).

[37]*See Allied Grp. Ins. Co. v. Allstate Ins. Co.*, 852 P.2d 485, 487 (Idaho 1993) ("The entitlement exclusion focuses on the driver's state of mind.  I.C. § 49-1212(1)(b), on the other hand, requires that an owner's policy of liability insurance shall insure the named person and any other person using the insured vehicle with the express or implied permission of the named person. . . . .  The entitlement exclusion violates the provisions of I.C. § 49–1212(1)(b), and is, therefore, not enforceable.").

[38]*Nationwide Mut. Ins. Co. v. Baer*, 439 S.E.2d 202, 204 (N.C. Ct. App. 1994) (holding that reasonable belief exclusion does not conflict with liability policy statute because it actually "'broadens the coverage which it provides beyond those who use the covered vehicle with permission.  It now covers persons who have a subjective, reasonable belief that they are entitled to use the vehicle.'") (quoting *Aetna Cas. & Sur. Co. v. Nationwide Mut. Ins. Co.*, 381 S.E.2d 874, 875 (N.C. Ct. App. 1989), *aff'd*, 392 S.E.2d 377 (N.C. 1990)).

clause's meaning. Courts and commentators have noted that the clause "differs from the traditional 'omnibus' clause, which authorizes coverage for a non-owner's permissive use of a vehicle" because it "is couched in terms of entitlement rather than permission, causing a shift in the inquiry from an objective determination, whether the owner or one in legal possession of the car gave the user permission, to a mixed objective and subjective determination of the user's state of mind."[39] The scope of authority that may form the basis of such "entitlement" has been the subject of much litigation. According to the Georgia Supreme Court, this aspect of the clause

> is susceptible of three logical and reasonable interpretations: that the user must be authorized by law to drive in order to reasonably believe he is entitled to use a vehicle; that the user must have the consent of the owner or apparent owner in order to reasonably believe he is entitled to use the vehicle; or, that the user must have both consent and legal authorization in order to be entitled to use the vehicle.[40]

The court concludes that only the second of these three interpretations is consistent with the coverage requirements found at AS 28.20.440(b). For a user to be considered an "insured" under a liability policy, and thereby receive the mandatory UIM coverage that comes with that status, the user need only be "using the vehicle with the express or implied permission of the named insured."[41] To require additional permission, such as the legal authorization, would impermissibly narrow the scope of coverage below the statutory minimum.

Under Alaska law, insurers may include in their policies exclusions not found in AS 28.20.440 or other similar statutes so long as the exclusions do not "reduce the scope of coverage below the legal minimum."[42] If an insurance policy "does not provide

---

[39] John Bordeau, *et al.*, 7 Am. Jur. 2d Automobile Insurance § 241 (2nd ed.) (citing *Hurst v. Grange Mut. Cas. Co.*, 470 S.E.2d 659, 661 (Ga. 1996)).

[40] *Hurst*, 470 S.E.2d at 663.

[41] AS 28.20.440(b)(2).

[42] *Burton v. State Farm Fire & Cas. Co.*, 796 P.2d 1361, 1363 (Alaska 1990). *See also Nelson v. Progressive Cas. Ins. Co.*, 162 P.3d 1228, 1231 (Alaska 2007).

statutorily required coverage, it will be reformed to conform with statutory requirements."[43] To bring the exclusion clause in this case into compliance with Alaska law, the court will reform it to make clear that it applies to preclude coverage only where the individual using the vehicle lacks a reasonable belief that he or she has the named insured's permission to do so. After that reformation the exclusion clause is valid because it expands upon, not limits, the coverage mandated by AS 28.20.440(b).[44]

**B.    Interpretation and Application of the Exclusion Clause**

The parties dispute the correct interpretation of the exclusion clause, which presents a question of law.[45] In Alaska, insurance contracts are construed according to the principle of "reasonable expectations," which means that "'[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.'"[46] In order to determine the insured's reasonable expectations, Alaska courts look to "(1) the language of the disputed provisions in the policy, (2) other provisions in the policy, (3) extrinsic evidence, and (4) case law interpreting similar provisions."[47] "Where a clause in an insurance policy is ambiguous in the sense that it is reasonably susceptible to more

---

[43]*State Farm Mut. Auto. Ins. Co. v. Houle*, 269 P.3d 654, 660 (Alaska 2011).

[44]6-61 New Appleman on Insurance Law Library Edition § 61.05 ("The 'reasonable belief' standard should cover not only those with actual permission, but also those who have a reasonable basis for so believing.").

[45]*See Nelson*, 162 P.3d at 1231.

[46]*Bering Strait Sch. Dist. v. RLI Ins. Co.*, 873 P.2d 1292, 1295 (Alaska 1994) (quoting *State v. Underwriters at Lloyds, London*, 755 P.2d 396, 400 (Alaska 1988)).

[47]*Allstate Ins. Co. v. Teel*, 100 P.3d 2, 4 (Alaska 2004). *See also Stordahl v. Government Employees Ins. Co.*, 564 P.2d 63, 66 (Alaska 1977).

than one interpretation, the court accepts that interpretation which most favors the insured."[48] Courts should narrowly construe exclusions to a policy's coverage.[49]

PIIC argues that the exclusion clause precludes coverage because Yeager did not reasonably believe she was entitled to operate the SAFE vehicle while intoxicated or for personal purposes.[50] More specifically, PIIC argues that Yeager could not have reasonably believed she was entitled to use SAFE's vehicle to (1) drive from Dillingham to Lake Aleknagik to pick up Kyakwok; (2) drive to and from the bar; and (3) drive after she had become "legally impaired."[51] The court declines to consider PIIC's first argument because what matters here are Yeager's reasonable beliefs at the time of the collision,[52] not when she drove to Lake Aleknagik. Yeager responds that the exclusion clause is ambiguous and, in any event, does not apply here.

With respect to Yeager's argument that the clause is ambiguous, Yeager focuses on the clause's usage of the phrase "entitled to [use the vehicle]" and argues that the scope of the necessary "entitlement" is unclear. Specifically, she asserts that it is unclear whether the clause evaluates the reasonableness of her belief that she was permitted to use the vehicle in a specific manner (i.e., while intoxicated),[53] or merely that SAFE had given her permission to use the vehicle.[54] Yeager contends that under the latter, more favorable interpretation, the clause does not apply because she was in lawful possession of the vehicle at the time of the accident. PIIC's reply does not meaningfully address Yeager's argument. PIIC focuses on the word "use," not the word

---

[48] *Bering Strait Sch. Dist.*, 873 P.2d at 1295.

[49] *Id.*

[50] Doc. 24 at 18.

[51] Doc. 24 at 8 (citing AS 28.35.030).

[52] *See* Doc. 1-2 at 8 ¶ 6; *id.* at 9 ¶¶ 18-21.

[53] Doc. 30 at 15.

[54] Doc. 30 at 14-15.

-10-

"entitled," and argues that "use" is a broad, unambiguous term that includes driving a vehicle or riding as a passenger and "perhaps other forms of 'using' in other contexts."[55]

If "a clause in an insurance policy is ambiguous in the sense that it is reasonably susceptible to more than one interpretation," courts accept "that interpretation which most favors the insured."[56] "[T]he mere fact that two parties to an insurance contract have differing subjective interpretations of that contract does not make it ambiguous. Rather, ambiguity exists 'only when the contract, taken as a whole, is reasonably subject to differing interpretations.'"[57]•

The court concludes that each of Yeager's two interpretations of the exclusion clause is reasonable, and therefore the clause is ambiguous.[58] The policy does not specify whether the "entitlement" referenced in the exclusion clause refers to a user's method of use or to the user's permission to use the vehicle. Based on this ambiguity, the court accepts the interpretation most favorable to Yeager. In other words, the relevant inquiry is whether Yeager reasonably believed that she had SAFE's permission to use SAFE's vehicle regardless of the method with which she used it.

Applying this interpretation of the exclusion clause to the facts of this case, the court must decide whether a fact question exists regarding Yeager's reasonable belief.

---

[55]Doc. 38 at 21.

[56]*Bering Strait Sch. Dist.*, 873 P.2d at 1295.

[57]*Dugan v. Atlanta Cas. Companies*, 113 P.3d 652, 655 (Alaska 2005) (quoting *U.S. Fire Ins. Co. v. Colver*, 600 P.2d 1, 3 (Alaska 1979)).

[58]*See Hurst v. Grange Mut. Cas.* Co., 470 S.E.2d 659, 663 (Ga. 1996) ("The number of reasonable and logical interpretations makes the clause ambiguous, and the statutory rules of construction require that we construe the ambiguous clause against the insurer.") (citations omitted); *Farm & City Ins. Co. v. Gilmore*, 539 N.W.2d 154, 157 (Iowa 1995) ("We find that the term 'entitled' in the policy exclusion is ambiguous and we adopt the interpretation most favorable to the insured. Accordingly, coverage is excluded when a person is using a vehicle without a reasonable belief that he or she had permission of the owner or apparent owner to do so."); *State Farm Mut. Auto. Ins. Co. v. Moore*, 544 A.2d 1017, 1020 (Pa. Super. Ct. 1988) ("[W]e find that 'entitled' as it is used in the clause at issue is ambiguous. As such, the provision is to be construed against the insurer, who was the drafter of the agreement.").

Whether there has been a permissive use of a vehicle ordinarily presents a question of fact for the jury.[59] There is no dispute that SAFE granted Yeager initial permission to use the SAFE vehicle and, as a result, the cases upon which PIIC relies involving a user who lacked such initial permission are inapposite.[60] The relevant question here is instead whether Yeager's actual use fell within the scope of SAFE's initial permission.

Courts have adopted three different legal theories for determining whether a permissive user has sufficiently deviated from the purpose and use for which the initial permission was granted to defeat coverage: (1) the "conversion" or "strict construction" rule; (2) the "liberal" or "initial permission" rule; and (3) the "moderate" or "minor deviation" rule.[61] The first and third rules represent opposite extremes. Under the strict construction rule, "any deviation, no matter how slight," will defeat coverage. Under the initial permission rule (referred to by some courts as the "hell or high water rule"), once initial permission is given, it extends "to any and all uses of the vehicle." And finally, under the minor deviation rule, slight or nonmaterial deviations do not preclude coverage whereas substantial deviations do.[62]

Yeager does not refer to the initial permission rule by name, but she effectively advocates for that rule's application where she argues that her lawful possession of the vehicle at the time of the accident is sufficient to establish that she reasonably believed her use was permissive.[63] In jurisdictions following the initial permission rule, "when a

---

[59] 7 Am. Jur. 2d Automobile Insurance § 226; *Hawkeye-Sec. Ins. Co. v. Bunch*, 643 F.3d 646, 651 (8th Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Scheel et al.*, 973 S.W.2d 560, 567 (Mo. Ct. App. 1998).

[60] *See Allstate Ins. Co. v. U.S. Fid. & Guar. Co.*, 663 F. Supp. 548, 554 (W.D. Ark. 1987), aff'd sub nom. *U.S. Fid. & Guar. Co. v. Cumpton*, 846 F.2d 1147 (8th Cir. 1988); *Taylor v. Pekin Ins. Co.*, 797 N.W.2d 131 (Table) (Iowa Ct. App. 2010).

[61] 7 Am. Jur. 2d Automobile Insurance § 233.

[62] Steven Plitt, et al., 8 Couch on Ins. § 113:5 (3rd ed.); 6-63 Appleman on Insurance § 63.06.

[63] *See* Doc. 30 at 15.

-12-

person is given permission to use a vehicle in the first instance, any subsequent use 'barring theft or the like,' is a permissive use" regardless whether that use was contemplated by the parties.[64]

In *Johnson v. U.S. Fidelity & Guaranty Co.*,[65] the Alaska Supreme Court was confronted with the possibility of adopting the initial permission rule, but found it unnecessary to reach the issue. *Johnson* involved a car owned by a man who lived in Ketchikan and worked on the North Slope. The car's owner told his friend that while he was out of town the friend could use the car whenever he needed. While the owner was away, the friend allowed a third party to drive the vehicle, and the third party was involved in an accident. The court construed the policy's omnibus clause broadly and held that the third party's use was permissive.[66] It ruled that the only two restrictions imposed by the friend on the third party were that the third party had to arrive at the small boat harbor when requested, and he was "not to 'monkey' with" the car, which the third party understood to mean "not to 'hot rod'" it.[67] Because the third party's use at the time of the accident did not violate either of these restrictions, the court held that his use was within the scope of the owner's implied permission.[68]

The *Johnson* court rendered its decision without deciding which of the three permissive use legal theories applies in Alaska. Justice Matthews in his concurrence, however, stated that the court should have reached "the question whether the initial permission rule should be adopted in Alaska" because a fact question existed as to whether the third party "was operating the vehicle beyond the permission given to

---

[64]*Johnson v. U. S. Fid. & Guar. Co.*, 601 P.2d 260, 265 (Alaska 1979) (Matthews, J., concurring). *See also* 7 Am. Jur. 2d Automobile Insurance § 235.

[65]601 P.2d at 265.

[66]*Id*. at 264.

[67]*Id*.

[68]*Id*.

-13-

him."[69] Justice Matthews concurred with the outcome of the majority opinion because he would have adopted the initial permission rule as the rule of decision.

"When interpreting state law, federal courts are bound by decisions of the state's highest court."[70] If that court has not addressed the relevant issue, the district court must use its best judgment to predict how the highest state court would resolve it "using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."[71] Because the Alaska Supreme Court has not decided which of these three rules applies in Alaska, the court must use its best judgment to predict which rule it would choose.

The Alaska Supreme Court based its *Johnson* decision on public policy grounds.[72] The Alaska legislature's "stated policy behind the MVSRA is to ensure that 'motorists be financially responsible for their negligent acts so that innocent victims of motor vehicle accidents may be recompensed for the injury and financial loss inflicted upon them.'"[73] Consistent with this public policy, Alaska statutory law mandates omnibus liability coverage for all permissive users, and Alaska courts construe such coverage liberally "so as to effectuate its basic intent, which is to protect the public from damages caused by vehicles operated by persons other than the named insured."[74] Because liability coverage must be construed liberally, it follows that UIM coverage must be construed in the same manner because the MVSRA requires insurers to

---

[69]*Id.* at 265.

[70]*Strother v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 865 (9th Cir.1996) (quotation omitted).

[71]*Id.* (quotation omitted). *See also Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

[72]*Johnson*, 601 P.2d at 263.

[73]*Nelson*, 162 P.3d at 1236 (quoting AS 28.20.010).

[74]*Johnson*, 601 P.2d at 263.

-14-

provide UIM coverage to all insureds under the liability policy.[75] These provisions of the MVSRA evince the Alaska legislature's robust policy of protecting innocent victims of automobile accidents, whether they are a third party injured by a permissive user or they are a permissive user injured by an uninsured third party.

With these public policy principles in mind, the court concludes that the Alaska Supreme Court would not adopt the strict construction rule. Under this rule any deviation from the named insured's grant of permission voids coverage. Contrary to Alaska's public policy goals, this rule minimizes coverage of innocent tort victims. It has not been widely adopted.[76] The more difficult determination is whether Alaska would adopt the minor deviation or the initial permission rule. On one hand, the minor deviation rule's moderate approach has been adopted in the "overwhelming majority" of jurisdictions.[77] But, on the other hand, the initial permission rule is commonly adopted in states with financial responsibility laws like Alaska's that require that "automobile insurance policies must insure the driver named in the policy, the 'named insured,' as well as any other person using the automobile with the named insured's express or

---

[75] AS 28.20.440(b)(3).

[76] 6-63 Appleman on Insurance § 63.06; 6-61 New Appleman on Insurance Law Library Edition § 61.05.

[77] 6-61 New Appleman on Insurance Law Library Edition § 61.05.

implied permission."[78] This rule best advances the Alaska's public policy goals by providing "maximum coverage for injured tort victims."[79]

After careful consideration, the court concludes that the initial permission rule would likely be adopted in Alaska. Of the three possible rules, the initial permission rule is the most consistent with the legislature's policy of protecting innocent victims of automobile accidents. Further, the only Alaska Supreme Court Justice to have weighed in on this question would have adopted the rule.[80] Because it is undisputed that SAFE granted Yeager initial permission to use its vehicle, PIIC's summary judgment motion is denied.

## V. CONCLUSION

Based on the preceding discussion, defendant's motion at docket 24 is DENIED.

DATED this 10th day of June 2015.

/s/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE

---

[78] 6-63 Appleman on Insurance § 63.06. *See, e.g., Norton v. Lewis*, 623 So. 2d 874, 875-76 (La. 1993) ("In our opinion, the narrower 'minor deviation' and 'conversion' rules followed by some jurisdictions, which make coverage turn on scope of the permission given in the first instance, render coverage uncertain, foster unnecessary litigation, and do not comport with our state's legislative policy of assuring an available fund for the innocent victims of automobile accidents."); *Commercial Union Ins. Co. v. Johnson*, 745 S.W.2d 589, 591 (Ark. 1988) (same); *U. S. Fid. & Guar. Co. v. Fisher*, 494 P.2d 549, 551-52 (Nev. 1972) ("Our Legislature has spoken on the issue, as evidenced by NRS 485.3091, subsection 2, of the Safety Responsibility Act, *supra*. Once an owner voluntarily hands over the keys to his car, the extent of permission he actually grants is irrelevant."); *Progressive N. Ins. Co. v. Concord Gen. Mut. Ins. Co.*, 864 A.2d 368, 376 (N.H. 2005) ("We conclude, as have other courts, that the liberal approach to omnibus coverage under the 'initial permission' rule best preserves the legislature's goal of protecting accident victims from financial hardship.").

[79] 6-63 Appleman on Insurance § 63.06.

[80] *See Johnson*, 601 P.2d at 265 (Matthews, J., concurring) (stating that the initial permission rule "advances the goal that motorists be financially responsible for their negligent acts so that those who are wrongfully injured may receive compensation.").

-16-